**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LACREASHA A. KENNEDY-JARVIS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CALVIN R. WELLS., )<br>)<br>Defendant. ) | Civil Action No. 13-cv-1596 (RDM) |

**MEMORANDUM OPINION AND ORDER**

In this civil action, Plaintiffs allege that Defendant committed fraud and common-law torts in connection with the estate of Defendant's grandmother, Rose E. Walker. Before the Court are Plaintiffs' Motion to Strike and for Sanctions, Dkt. 29; Defendants' Motion for Judgment on the Pleadings or for Summary Judgment For Lack of Subject Matter Jurisdiction, Dkt. 31; and Plaintiffs' Motion for Leave to File an Amended Motion to Strike or Response in Opposition to Defendant's Motion in Opposition, Dkt. 35. The principal issue presented is whether the judicially-recognized probate exception to federal jurisdiction is applicable to any or all of Plaintiffs' claims. For the reasons explained below, the Court concludes that, although the Court lacks jurisdiction to consider whether to grant some of the relief sought, the probate exception does not preclude the Court from adjudicating the merits of each of Plaintiffs' claims.

1

## I. BACKGROUND

The complaint sets forth the following allegations, which, at this stage of the litigation and in light of the minimal factual record before the Court, are taken as true for purposes of resolving Defendant's challenge to the Court's jurisdiction.[1]

Rose Walker, a resident of Plainfield, New Jersey, died on March 28, 2000. At the time of her death, her will provided that all of her real and tangible personal property would be sold, and the proceeds would be placed in a trust for the benefit of three beneficiaries: (1) James Jarvis, who was Walker's son; (2) Calvin Wells, who was Walker's grandson and the Defendant in this action; and (3) Rayfield Wells, who was another of Walker's grandsons. Each beneficiary received a one-third interest in the trust. The will also included a "spendthrift clause," which provided that each beneficiary would receive 20% of his share of the trust each year for a period of five years.

Although United National Bank was named to serve as the executor and trustee, the Defendant, Calvin Wells, was permitted by the Probate Part of the New Jersey Superior Court to serve as substitute administrator. The complaint alleges that Defendant failed in his duties as administrator and, before and after Walker's death, engaged in a series of fraudulent or improper

---

[1] On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden to establish jurisdiction by the preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The same standard, moreover, applies to a motion for judgment on the pleadings. *See Bowman v. District of Columbia*, 562 F. Supp. 2d 30, 32 (D.D.C. 2008). In resolving such a motion, the Court "may consider . . . the complaint standing alone," or may consider the "complaint 'supplemented by undisputed facts evidenced in the record" or the "court's resolution of disputed facts.'" *Id.* at 32-33 (quoting *Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992)). Here, although Defendant moves, in the alternative, for summary judgment, Dkt. 31 at 6-9, he has not presented any evidence that controverts the allegations of the complaint relevant to the jurisdictional issue or that would otherwise require the Court to disregard the allegations of the complaint for purposes of resolving the pending motions. Dkt. 31 at 8.

acts designed to deprive Defendant's uncle, James Jarvis, of a substantial portion of his share of the estate.  It alleges, for example, that Defendant unduly influenced Walker to deed her residence to herself, Defendant and his brother just eleven days before Walker's death, *see* Dkt. 1 ¶ 19-21; failed to report the transfer of that property on the New Jersey Inheritance Tax Return as "a transfer made in contemplation of death," *id.* ¶ 22; and, in his capacity as administrator, ignored the terms of Walker's will, *e.g. id.* ¶ 25.  The complaint also alleges that Defendant misrepresented the value of Walker's estate to Jarvis and thereby induced him to forgo his interest in the trust in exchange for a payment well below the amount to which he was entitled.  It alleges, in particular, that Defendant failed to disclose to Jarvis that Walker had conveyed her residence to Defendant and his brother just days before her death and that Defendant hid or failed to account for other property in the estate, including a property located in South Carolina that sold in 2003 for over $600,000.  *Id.* ¶¶ 26-28, 34.  As a result, Jarvis agreed to receive approximately $180,000 in cash and property for his inheritance, rather than the $600,000 to which he was allegedly entitled.  *Id.* ¶ 30.

Jarvis died on June 3, 2003.  *Id.* ¶ 47.  The Plaintiffs in this action are his heirs—his surviving spouse and two children.  *Id.* ¶¶ 7-9, 48.  They sue in their capacity as residual beneficiaries of the Walker estate.  The complaint alleges claims for breach of fiduciary duty, conversion, and the tort of deceit, fraudulent misrepresentation and omission.  *Id.* ¶¶ 50-69.  Plaintiffs seek compensatory and punitive damages, as well as an order that, among other things, would require Defendant to "provide an inventory and Formal Accounting" of the estate, remove Defendant as administrator of the estate, disgorge Defendant of fees collected as administrator of the estate, appoint a neutral third party to administer the estate, and establish a trust on all converted estate assets.  *Id.* at 13.

## II.  DISCUSSION

The issues currently before the Court fall into two categories: those relating to the Court's jurisdiction and those relating to the parties' meet and confer obligations.  Because the Court must first consider its jurisdiction, *see Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006), the Court starts with Defendant's Motion for Judgment on the Pleadings or for Summary Judgment, Dkt. 31, and Plaintiffs' Motion for Leave to File an Amended Motion to Strike or Response, Dkt. 35.

**A.  Subject Matter Jurisdiction and the Probate Exception**

*1.  Motion for Leave to File Opposition*

As an initial matter, the Court must decide what filings are properly before the Court. Plaintiffs' opposition to Defendant's jurisdictional motion was due on October 27, 2015.  On that day, Plaintiffs filed a Motion to Strike or in Opposition, Dkt. 33, which in substance is an opposition to Defendant's motion.  The next day, Plaintiffs filed a motion for leave to file an amended opposition, along with a proposed, amended opposition, and explained that the amended filing was necessary because Plaintiffs' counsel had been ill and was thus able to file only a "skeletal Response" on the due date.  Dkt. 35 at 1.  Defendant opposes Plaintiffs' motion for leave to file the amended pleading, arguing that it does not "introduce any substantive information" and would result in "needless additional motion practice."  Dkt. 37 at 2.

The Court concludes that the motion for leave to file the amended opposition is well taken.  Plaintiffs' motion is essentially an out-of-time motion for a one-day extension, with the important caveat that Plaintiff did file a "skeletal Response" on the due date.  As a result, the standard for reviewing Plaintiffs' motion should be no more stringent than the standard for considering an out-of-time motion for an extension of time.  *Cf.* Fed. R. Civ. P. 6(b)(1)(B).

Because Plaintiffs' counsel was ill and made an effort to file on the due date, because any effect on the proceeding was negligible, and because no prejudice would result from accepting Plaintiffs' amended opposition, the Court concludes that Plaintiffs have demonstrated "good cause" and "excusable neglect" sufficient to justify a one-day extension.  *See* Fed. R. Civ. P. 6(b)(1)(B); *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (factors relevant to whether a party has demonstrated excusable neglect include "the danger of prejudice" to the other party, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the control of the movant, and whether the movant acted in good faith.").  Indeed, to the extent any "needless additional motion practice" was required here, Dkt. 37 at 2, it was the product of Defendant's opposition to Plaintiffs' reasonable request that the Court permit Plaintiffs to amend their opposition one day after it was filed in light of counsel's illness.  The motion for leave to file is **GRANTED**.

    *2. Motion to Strike*

    Plaintiffs, in turn, argue that Defendant's motion should be stricken because it was allegedly either "ghost written" or "guided" by a lawyer who is not a member of the bar of this Court. Dkt. 33 at 1, Dkt. 35-1 at 1.  They also alleged, for similar reasons, that Defendant's opposition to Plaintiffs' Motion to Strike, Dkt. 28, as well as Defendant's unilateral Meet and Confer Statement, Dkt. 32, should be stricken.  Dkt. 34 at 1-2.  Plaintiffs, however, do not cite a single statute, rule or precedent in support of their contention that either Defendant or their purported counsel has acted improperly.  Nor do Plaintiffs address the guidance from the American Bar Association Standing Committee on Ethics and Professional Responsibility, which has concluded "that there is no prohibition in the Model Rules of Professional Conduct against undisclosed assistance to pro se litigants, as long as the lawyer does not do so in a manner that

violates rules that otherwise would apply to the lawyer's conduct." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-446, *Undisclosed Legal Assistance to Pro Se Litigants* (2007); *see also Mokhtar v. Kerry*, 2015 WL 1138454 at *1, n.1 (D.D.C. March 13, 2015). In light of Plaintiffs' failure to cite *any* authority or to present *any* argument in support of their motion to strike, the motion is **DENIED** for failure to comply with Local Civil Rule 7(a).

    *3. The Probate Exception to Federal Jurisdiction*

In any event, regardless of whether properly raised by Defendant, "[t]he first and fundamental question that" the Court is "bound to ask and answer is whether [it] has jurisdiction to decide the case." *Bancoult*, 445 F.3d at 432 (internal quotation marks omitted). Here, there is no dispute that the complete diversity and amount in controversy requirements of 28 U.S.C. § 1332 are satisfied and that, in the ordinary course, the Court would have subject matter jurisdiction. Defendant contends, however, that the probate exception to the usual rules of federal jurisdiction precludes Plaintiffs from pursuing their claims in federal court. Plaintiffs, in turn, do not contest that their claims are "significantly intertwined" with an underlying probate action, but argue that the relationship between their tort claims and an underlying probate does not deprive this Court of subject matter jurisdiction. Dkt. 35-1 at 2. Although the probate exception undoubtedly places limits on the relief, if any, that the Court may grant and may also circumscribe some of Plaintiffs' claims, Plaintiffs are correct that the Court has subject matter jurisdiction to adjudicate the essential elements of each of the claims asserted in the complaint.

The probate exception has its roots in English legal history. As the Supreme Court explained in *Markham v. Allen*, 326 U.S. 490, 494 (1946), the first Congress intended that the "equity jurisdiction conferred by the Judiciary Act of 1789" mirror the jurisdiction of the English

Court of Chancery as it existed in 1789, and the jurisdiction of that court "did not extend to probate matters." The Supreme Court, moreover, has recognized that Congress did not intend to abrogate the probate exception when it abolished the distinction between law and equity and adopted the current diversity statute. *See Marshall v. Marshall*, 547 U.S. 293, 307 (domestic relations exception), 308 (probate exception) (2006).

The exception, however, is a narrow one. In *Markham*, the Court stressed that federal courts retain jurisdiction over matters relating to an estate, "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." 326 U.S. at 494. A federal court, accordingly, "may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Id.* More recently, in *Marshall v. Marshall*, the Court construed "*Markham*'s enigmatic" reference to "interfere[ing] with the probate proceeding" merely to reaffirm the "general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." 547 U.S. at 311. As described in *Marshall*, then, the probate exception "reserves to state probate courts a probate or annulment of a will and the administration of the decedent's estate," and "it also precludes federal courts from endeavoring to dispose of property that is in the custody of the state probate court." *Id* at 311-12; *see also Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (after *Marshall*, "a federal court should decline subject-matter jurisdiction only if a plaintiff seeks" either to (1) "administer an estate, probate a will, or do any other purely probate matter," or (2) "reach a res in the custody of a state court"); *Lewis v. Parker*, __F.3d__, 2014 WL 4460279 at *1 n.2 (D.D.C. 2014)

7

(quoting *Marshall*, 547 U.S. at 311). In all other respects, however, federal courts retain the jurisdiction that is otherwise conferred by Article III and statute to "adjudicate matters" relating to an estate. *Marshall*, 547 U.S. at 311-12.

Accordingly, the Court must determine whether it is being asked to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir.2008) (citing *Marshall*, 547 U.S. at 311-12). The probate exception does not apply to claims that "merely impact[ ] a state court's performance of one of these tasks," *Lee Graham Shopping Center, LLC v. Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015); rather, it applies only where a case "actually requires a federal court to perform one of" these "specifically enumerated" acts, *id.*

Here, none of Plaintiffs claims fall within the third prong of the probate exception—which applies where a federal court must reach a *res* "in the custody of the state probate court," *see Marshall*, 547 U.S. at 311—for at least two reasons. First, all three of Plaintiffs' claims seek an *in personam* judgment against Defendant. As the Court of Appeals for the Third Circuit has explained, *in personam* actions may seek "a judgment that a party has the right to a distributive share of an estate, but stop[] short of determining a party's interest in specific estate property," while, in contrast, *in rem* actions "seek[] a determination of a party's interest in specific property in the custody of the probate court." *Three Keys*, 540 F.3d at 230. Each of Plaintiffs' three claims explicitly seeks to hold Defendant "directly liable for monetary damages," Dkt. 1 ¶¶ 56, 62, 69, rather than seeking a judicial decree that Plaintiffs are entitled to specific estate property.

Second, although some of the relief Plaintiffs seek suggests that the estate is still subject to probate, *see, e.g.*, Dkt. 1 at 13 (requesting that the court appoint a third party to "complete the administration of the Estate"), Defendant represents that the probate of the will has been

"resolved," Dkt. 31 at 8, and he has attached to his motion a 2009 order of the New Jersey probate court providing that "[a]ll pleadings are dismissed without prejudice" for want of prosecution "for more than a year." *See* Dkt. 31 at 39. Plaintiffs do not contest the assertion that there are no ongoing probate proceedings in the New Jersey courts. Accordingly, even assuming Plaintiffs' claims could be considered *in rem*,[2] the third prong would not apply because Plaintiffs are not asking this Court to "wrest a *res* from the control of another court" that is currently exercising custody over that property. *See, e.g.*, *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (explaining that probate exception did not apply in *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006), in part because "[t]he father had died and the probate of his estate had been completed"); *Three Keys*, 540 F.3d at 229 ("Because the SR Utility shares in question are *still* property under the jurisdiction of the Orphans' Court, it follows that we cannot assume *in rem* jurisdiction over that same property.") (emphasis added); *but see Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (holding that claims that would "'disturb or affect the possession of property in the custody of a state court" were barred by probate exception, even though underlying estate had already been probated). Here, however, it appears at least on the current record that nothing has occurred in the New Jersey probate court for over six-and-a-half years. The probate exception prohibits federal courts from taking jurisdiction over a *res* when a

---

[2] The Court of Appeals for the Second Circuit, for instance, implicitly characterized as *in rem* a plaintiff's conversion claim, which alleged that an estate administrator "wrongfully withheld [estate] funds from plaintiff," and concluded that the probate exception applied because the claim sought "disgorgement of funds that remain[ed] under the control of the Probate Court." *Lefkowitz*, 528 F.3d at 107 (to provide the relief Plaintiff sought would have required the federal court "to assert control over property that remains under the control of the state courts"); *see also, e.g.*, *Three Keys*, 540 F.3d at 230 (holding that probate exception precluded jurisdiction over claim styled as an *in personam* claim where Plaintiff sought not only "the distribution of probate property," but also a determination that its interest in specific shares and dividends was "superior to the interests of the Estate").

state court "*is exercising*" jurisdiction over that *res*, *Marshall*, 547 U.S. at 311 (emphasis added)—not after the state court's proceedings have concluded.

Thus, because Plaintiffs are not asking the Court to assume "*in rem* jurisdiction over property that is in the custody of the probate court," the critical question is whether Plaintiffs are asking this Court to probate or annul a will or administer a decedent's estate. *Three Keys*, 540 F.3d at 227 (citing *Marshall*, 547 U.S. at 311-12). The Court will address each of Plaintiffs' three claims for relief in turn.

Count I alleges that Defendant breached his fiduciary duty to the beneficiaries of the Walker estate. Dkt. 1 ¶¶ 50-56. This claim does not implicate the validity of Walker's will or otherwise require the Court to probate or annul the will. Nor does it ask the Court to administer Walker's estate. As numerous courts have recognized, personal tort claims against estate administrators are not barred by the probate exception. Such a claim "does not ask the court in which it is filed to administer the estate, but rather to impose tort liability on the guardians for breach of fiduciary duty." *Jones*, 465 F.3d at 307-08 (probate exception does not bar federal jurisdiction over claim of breach of fiduciary duty against estate administrator for having mismanaged estate); *see also, e.g.*, *Lefkowitz*, 528 F.3d at 107-08 (concluding that Court had jurisdiction over claims for "damages from Defendants personally rather than [estate] assets or distributions," including claims against administrator for breach of fiduciary duty). Indeed, in *Marshall* itself, the Supreme Court characterized claims against estate executors for breach of fiduciary duty as "matters well beyond probate of a will or administration of a decedent's estate." 547 U.S. at 311. The *Marshall* Court's first example of such a non-probate matter was *Mangieri v. Mangieri*, 226 F.3d 1, 2 (1st Cir. 2000), in which the plaintiff alleged that the executor of the plaintiff's father's estate had breached his fiduciary duties by "failing to consider" the plaintiff's

"claim as an omitted child and thus fail[ing] to protect [the plaintiff's] interest as one of the testator's heirs." The probate exception, accordingly, does not deprive this Court of jurisdiction over Plaintiff's claim for breach of fiduciary duty.

Count II alleges that Defendant took permanent possession of estate assets that he was holding and administering, thereby converting assets that would otherwise belong to Plaintiffs through their inheritance rights. Dkt. 1 ¶¶ 57-62. Once again, this claim does not seek to probate or annul a will, nor would adjudicating it require this Court to administer an estate. Rather, it seeks to hold Defendant personally liable "for monetary damages" (Dkt. 1 ¶ 62) for misappropriating estate assets. Granting an *in personam* judgment for money damages against the estate administrator would not require this Court to probate or administer the estate. Indeed, if a federal court may exercise jurisdiction over a claim for mismanagement of an estate, as described above, there is no reason why that jurisdiction ought not extend to a claim that the mismanagement at issue has risen to the level of misappropriation. It is true that the Court of Appeals for the Second Circuit held in *Lefkowitz* that the plaintiff's claim for conversion, which alleged that the estate administrator had "'wrongfully withheld [estate] funds from plaintiff,'" fell within the probate exception. But the Court reached that conclusion because the claim sought "disgorgement of funds that remain[ed] under the control of the Probate Court." 528 F.3d at 107. Here, in contrast, the complaint seeks "monetary damages" from the Defendant. Dkt. 1 ¶ 62.

For similar reasons, Count III also does not fall within the probate exception. Count III alleges that Defendant fraudulently misled James Jarvis and thereby induced him to give up a large portion of his inheritance. Dkt. 1 ¶¶ 63-69. In this respect, Claim III is similar to the types of claims that the Supreme Court has explicitly held fall outside the probate exception. In

*Marshall*, for example, the Supreme Court held that the federal courts had jurisdiction over the claim that Vickie Lynn Marshall (*i.e*. Anna Nicole Smith) asserted against the ultimate beneficiary of J. Howard Marshall's estate. 547 U.S. at 295. That claim, like Count III here, was premised on the notion that "'[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that [s]he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.'" *Id.* at 312 (quoting 4 Restatement (Second) of Torts § 774B (1979)). Long before *Marshall*, moreover, the Supreme Court sustained federal jurisdiction in an action against an estate administrator who had allegedly falsely represented the value of decedent's property to the probate court and beneficiaries and obtained a receipt from one beneficiary through fraudulent means. *See Payne v. Hook*, 74 U.S. 425, 433 (1868).

As the Second Circuit explained in *Lefkowitz*, after *Marshall*, "[t]he probate exception can no longer be used to dismiss 'widely recognized torts' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court." *Lefkowitz*, 528 F.3d at 108 (brackets omitted). That is precisely the circumstance here. As with Claims I and II, adjudicating Claim III would not require this Court to probate or annul Walker's will or to administer Walker's estate. To the contrary, it would require only that the Court determine whether Defendant's conduct meets the elements of the tort of fraudulent misrepresentation.

For the above reasons, the Court concludes that it has jurisdiction to adjudicate the essential elements of each of the claims asserted. That does not end the matter, however, because the probate exception does preclude this Court from adjudicating whether to award some of the relief requested by Plaintiffs. The complaint, for example, asks that the Court remove

Defendant as "Administrator CTA" and that it appoint "a neutral third party to complete the administration of the Estate." Dkt. 1 at 13. That relief, as well as other relief sought in the complaint, would cross the line and require that the Court administer or probate the estate, in violation of the probate exception. *See, e.g.*, *Vaughn v. Montague*, 924 F. Supp. 2d 1256, 1268-89 (W.D. Wash. 2013) ("Under the probate exception, this court cannot order distribution of the trust's assets, nor declare the estate settled."); *Wisecarver*, 489 F.3d at 751 (Plaintiff's claims for money damages and an accounting did not fall into the probate exception, but probate exception barred court from entering orders enjoining disposition of estate assets, divesting defendants of estate property, or declaring that already-probated will was invalid).

At this juncture, however, the Court need not decide whether its jurisdiction extends to each type of relief requested in Plaintiffs' complaint. The parties have not addressed this separate issue in their briefing on the pending motion, nor is it evident that the Court will ever be required to reach the issue of available remedies. If and when appropriate, and after considering briefing from the parties, the Court will address which of the remedies referenced in the complaint go beyond the Court's jurisdiction. For present purposes, however, the Court concludes that is has jurisdiction over each of Plaintiffs' three claims. Accordingly, Defendant's Motion for Judgment on the Pleadings or for Summary Judgment, Dkt. 31, is **DENIED**.

**B. Plaintiffs' Motion to Strike Defendant's Notice Of Failure To Meet And Confer, Dkt. 29**

Before Defendant filed the jurisdictional motion discussed above, Dkt. 31, he filed a "Notice" asserting that Plaintiffs had failed to meet and confer within the deadlines set out in the Court's scheduling order. Dkt. 28. Defendant argues that he had made "numerous attempts" to comply with the scheduling order but Plaintiffs repeatedly failed to participate in the process. *Id.* at 1. The next day, Plaintiffs filed a Motion to Strike Defendant's Notice Regarding Meet And

Confer, Dkt. 29, alleging that it was, in fact, Defendant who failed to respond to Plaintiffs' efforts to coordinate in compliance with the meet and confer requirement.  Plaintiffs further allege that Defendant's "Notice" was intended to induce the Court to continue a scheduling conference that had been set for October 21, 2014.  Dkt. 29 at 2.  Thus, Plaintiffs allege that the "Notice" was "crafted to serve a dilatory improper purpose and as such should be justly struck."  *Id.* at 4.  Plaintiffs request that the Court impose sanctions on Defendant for "filing his Notice, rather than simply making a telephone call to Plaintiffs' counsel to facilitate the parties' court ordered meet and confer."  *Id.* at 6.

In response, Defendant argues that Plaintiffs' motion to strike should be denied because it fails to comply with Local Civil Rule 7(a), which requires that any motion be accompanied by a statement of points and authority identifying "specific points of law and authority that support the motion."  Dkt. 30 at 1-2.  Defendant also argues that, even if the motion is construed to invoke Federal Rule of Civil Procedure 12(f)—which addresses motions to strike—that Rule applies only to "pleadings," not to "notices" such as that filed by Defendant.  Dkt. 14.  Defendant further argues that the Motion to Strike lacks factual merit and violates Rule 11.  He too requests that the Court grant sanctions.

The Court concludes that Plaintiffs' motion to strike fails to comply with this Court's Local Civil Rules because it does not include a separate statement of points and authority.  Plaintiffs, moreover, have identified no law supporting their request to strike Defendant's submission—nor is it evident what, if any, purpose would be served by striking the "Notice."  The motion to strike is, accordingly, **DENIED**.

The Court declines to award sanctions against either party at this time, both because the parties have not demonstrated that the "extreme punishment" of Rule 11 sanctions is warranted

in these circumstances, *see Henok v. Chase Home Fin.*, 925 F. Supp. 2d 46, 53 (D.D.C. 2013), and because both parties' requests for sanctions fail to comply with the procedural requirements of Rule 11.  Both parties ignore the requirements of Rule 11 that a motion for sanctions be made "separately from any other motion" and served on the non-movant to allow an opportunity to withdraw the challenged filing or assertion.  *See* Fed. R. Civ. P. 11(c)(2); *Henok*, 925 F. Supp. 2d at 53.  Going forward, both parties should ensure that their submissions are consistent with the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.[3]  Consistent with those rules, motions for sanctions should not be made without *substantial* basis and without first engaging in *good faith* efforts to resolve the issue in the manner proscribed by Federal Rule of Civil Procedure 11(c)(2).  The pending requests for sanctions are, accordingly, **DENIED**.

## C. Future Proceedings

Finally, while leveling accusations of misconduct at one another, *both* parties have failed to comply in a timely manner with the meet and confer requirement set forth in the Federal Rules of Civil Procedure, this Court's Local Civil Rules, and an order entered in this case, *see* Dkt. 27.  Absent separate agreement among the parties, it is hereby **ORDERED** that the meet and confer conference shall take place telephonically on July 15, 2015 at 2:00 p.m. EDT, and that Plaintiffs' counsel shall initiate the call.  *See* Dkt. 27.  It is further **ORDERED** that on or before July 22, 2015, the parties shall *jointly* file the requisite meet and confer statement.  The parties shall appear for a scheduling conference in Courtroom 21 on August 4, 2015 at 10:15 a.m.

---

[3] Defendant has already been admonished that the Court will reject any filings that do not comply with the Federal Rules of Civil Procedure or with this Court's local rules.  *See* Dkt. 20 at 11.  The parties are reminded that all orders previously entered in this case remain in full effect.

## III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Strike, Dkt. 29, and Defendant's Motion to Dismiss or for Summary Judgment, Dkt. 31, are **DENIED.** Plaintiffs' Motion for Leave to File Amended Motion to Strike or Response, Dkt. 35, is **GRANTED.**

It is further **ORDERED** that, unless otherwise agreed to by both parties, the parties' meet and confer conference shall take place telephonically on July 15, 2015 at 2:00 p.m. EDT, and that Plaintiffs' counsel shall initiate the call.  On or before July 22, 2015, the parties shall *jointly* file the requisite meet and confer statement.  The parties shall appear for a scheduling conference in Courtroom 21 on August 4, 2015 at 10:15 a.m.

It is **SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 1, 2015